**Walter HARDIN, Jr., Plaintiff,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant, Third–Party Plaintiff,**

v.

**ALLIANCE–ACTION INSURANCE SERVICES, INC., et al., Third-Party Defendants.**

**Civ. A. No. 1:88–cv–1414–MHS.**

United States District Court, N.D. Georgia, Atlanta Division.

May 11, 1989.

Steve Anthony DiDio, DiDio & Broome, Norcross, Ga., for Walter Hardin, Jr.

Frederick Mills Valz, III, Webb Carlock Copeland Semler & Stair, Atlanta, Ga., for American Casualty Company of Reading, Pa.

Martin Louis Fierman, Office of Martin Louis Fierman, Eatonton, Ga., for Alliance–Action Ins. Services, Inc., dba, American Ins. Co. and John England.

## ORDER

SHOOB, District Judge.

The facts in this case are not in substantial dispute. Plaintiff bought an insurance policy on his 1974 Mack dump truck from defendant American Casualty Company of Reading, Pennsylvania ("American Casualty") through an agent of the third-party defendant Alliance–Action Insurance Services, Inc. ("Alliance"). Alliance is an agency that sells insurance policies for several insurance companies on a form provided by the Georgia Automobile Insurance Plan. Alliance assigns policies randomly to the companies that use its service. Plaintiff's insurance application form expressly rejected additional PIP coverage, comprehensive and collision coverage. Plaintiff argues that the signature on the form rejecting the optional coverages was not his. In any case, the form used did not explain the optional coverages that plaintiff allegedly rejected.

The issue to be resolved in these cross motions for summary judgment is whether the insurance policy plaintiff purchased through Alliance from American Casualty properly offered plaintiff optional coverages as required by O.C.G.A. § 33–34–5(b). If the insurance application does not properly follow the statute, the Court will construe the policy to provide the $50,000 optional PIP coverage from its inception. *Flewellen v. Atlanta Casualty Company*, 250 Ga. 709, 300 S.E.2d 673 (1983). The Court finds that the application form does not comply with the statute as amended in 1982 and therefore that plaintiff is entitled to full optional coverage as if he had accepted it under the policy.

Rather than explaining how the new statute should apply to the facts of this case, the parties argue about cases that apply the statute before it was amended. While those cases are relevant to understanding the legislative history of the statute, there are only a few cases that address the statute as it applies in this case. O.C.G.A. § 33–34–5(b), as amended in 1982, states:

> Each initial application for a new policy of motor vehicle liability insurance sold in this state after November 1, 1982, shall contain a statement in boldface type signed by the applicant indicating that the optional coverages listed in subsection (a) of this Code section have been explained to the applicant.

Before 1982 the statute merely required that the application contain separate spaces for acceptance or rejection of each optional coverage.

In *Flewellen v. Atlanta Casualty Company*, 250 Ga. 709, 300 S.E.2d 673 (1983), the Supreme Court of Georgia stated that "[t]he purpose of the statute is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits." 250 Ga. at 714, 300 S.E.2d 673. To determine whether plaintiff's claim is correct, the Court looks "to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme." *Id.* Plaintiff's argument that the signature on the forms was not his own signature is irrelevant to the Court's consideration of whether the application prop-

erly offered the required optional coverages. *See Morris v. Fidelity & Casualty Co.*, 169 Ga.App. 883, 884–85, 315 S.E.2d 451 (1984).

The standard the Court applies is whether the application form was in "substantial compliance" with the statute. *St. Paul Fire and Marine Insurance Co. v. Nixon*, 252 Ga. 469, 314 S.E.2d 215 (1984). The question the Court must answer is "does the form show that the applicant, as an ordinary reasonable man or woman, understood what was being offered and what choices he or she was making?" *Johnson v. Fidelity Insurance Co.*, 178 Ga.App. 431, 435, 343 S.E.2d 709 (1986). Unlike the former statute, the amended statute is clear in its requirements. It requires boldface type setting out the optional coverages and an explanation of the options. These requirements make the Court's application of the statute much easier than it was when most of the relevant cases were decided.

The case most closely on point is *Southern Guaranty Insurance Co. v. Goddard*, 190 Ga.App. 97, 378 S.E.2d 130 (1989). In *Goddard*, the Georgia Court of Appeals found that an application did not properly offer optional coverage because it did not contain the requisite boldface type explaining the optional coverages offered and because the options and the actions necessary to accept or reject the coverages were not explained with sufficient clarity so that the court could tell without speculation whether there was a knowing election. 378 S.E.2d at 133.

This case is similar to *Goddard* in that the application here did not explain the optional coverages and did not contain any boldface type indicating which options were available. Defendants offer no explanation how this application can be interpreted to comply with the clearly defined statutory requirements. The fact that the application is a standard form that was prepared by the Georgia Automobile Insurance Plan does not excuse defendant's failure to comply with the statute. Therefore, plaintiff is entitled to the full coverage required to be offered by the statute.

Plaintiff's motion for summary judgment is GRANTED; defendant's motion for summary judgment is DENIED. Defendant is ORDERED to accept plaintiff's offer of premiums necessary to purchase the optional coverage and to consider his proof of loss as if full coverage had been chosen at the initiation of the policy; the parties are DIRECTED to meet to determine the amount of benefits to which plaintiff is entitled. A stipulation as to the amount should be filed with the Court within thirty days from the date of this order. The Clerk is DIRECTED to enter final judgment in favor of plaintiff at that time.

IT IS SO ORDERED.